1   LIONEL Z. GLANCY (#134180)
    MICHAEL GOLDBERG (#188669)
2   GLANCY BINKOW & GOLDBERG LLP
    1801 Avenue of the Stars, Suite 311
3   Los Angeles, California 90067
    Telephone:   (310) 201-9150
4   Facsimile:   (310) 201-9160
    E-mail:      info@glancylaw.com
5
    *Attorneys for Plaintiff*
6   [Additional Counsel on Signature Page]

7              UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
8
    ALI ARAR, Individually and On          Case No.
9   Behalf of All Others Similarly
    Situated                               **CLASS ACTION COMPLAINT**
10
                                           CV11-05649 VBF (Ex)
              Plaintiff,
11
              v,
12                                         **JURY TRIAL DEMANDED**
    A-POWER ENERGY GENERATION
13  SYSTEMS, LTD., JINXIANG LU,
    KIN KWONG MAK, JOHN S. LIN,
14  EDWARD MENG, and MICHAEL
    ZHANG,
15
              Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

28

                    CLASS ACTION COMPLAINT

Plaintiff Ali Arar ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Class Action Complaint against defendants, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things: a review of the defendants' public documents; conference calls and announcements made by defendants; Securities and Exchange Commission ("SEC") filings; wire and press releases published by and regarding A-Power Energy Generation Systems, Ltd. ("A-Power" or the "Company"); securities analysts' reports and advisories about the Company; and information readily obtainable on the Internet.   Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a securities fraud class action on behalf of all persons or entities who purchased or otherwise acquired the securities of A-Power during the period from March 31, 2008 through and including June 27, 2011 (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  This class action is brought under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a); and SEC Rule 10b-5

promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company improperly accounted for its related-party transactions such that its financial statements were presented in violation of Generally Accepted Accounting Principles ("GAAP"); (2) the Company's revenues and income were misstated in violation of GAAP; (3) the Company's revenue and income reported in its filings with the SEC were overstated as the Company reported materially lower revenue and net income in its filings with the Chinese State Administration for Industry and Commerce ("SAIC"); (4) the Company lacked adequate internal and financial controls; and (5) as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

3.      On June 17, 2011, A-Power issued a press release announcing that an independent director had resigned from the Company's Board of Directors ("Board") "as a result of concerns that his views on process and best practices were not necessarily shared throughout the Company."   Later in the day, *Seeking Alpha* raised a number of red flags indicating fraud at the Company, including allegations that the 2009 financial statements filed by A-Power with the SAIC showed less

than one-tenth of the revenue and cash balances than reported in statements filed with the SEC.

4.    On this news, A-Power stock fell $0.51 per share or more than 22% in two consecutive trading sessions, to close at $1.74 per share on June 20, 2011.

5.    On June 27, 2011, A-Power announced that its independent auditor, MSCM LLP ("MSCM") had resigned effective June 26, 2011, and that its end-of-year 2010 Form 20-F filing would be delayed.

6.    Trading of the Company's shares was halted at $2.67 per share on the same day by NASDAQ, until the Company could provide "additional information."

7.    On June 28, 2011, the Company announced that the Chairs of its Board of Director's audit and compensation committees had resigned effective June 27, 2011.

8.    On July 1, 2011, the Company announced that another independent director had resigned from the Company's Board.

9.    As a result of defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

//

//

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

13.    In connection with the challenged conduct, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

14.    Plaintiff Arar, as set forth in the accompanying certification, incorporated by reference herein, purchased A-Power securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.    Defendant A-Power is a British Virgin Islands corporation with its principal executive offices located at No. 44 Jingxing Road, Tiexi District,

Shenyang, Liaoning Province, China 110021. A-Power through its subsidiaries, designs, constructs and installs distributed power generation systems and micro power grids. The aggregate number of shares of A-Power securities outstanding as of September 30, 2010 is approximately 46 million shares. A-Power's common stock is listed on the NASDAQ under the ticker "APWR."

16. Defendant Jinxiang Lu ("Lu") has been the Company's Chairman of the Board of Directors ("Board") and Chief Executive Officer ("CEO") since January 2008.

17. Defendant Kin Kwong Mak ("Mak") has been the Company's Chief Financial Officer ("CFO") since May 2009. On July 15, 2011, Defendant Mak's extended service contract as the Company's CFO will end.

18. Defendant John S. Lin ("Lin") was the Company's interim CFO from October 2008 through May 2009. Defendant Lin was a member of the Company's Board from January 2008 and served as its Secretary of the Board and served as its Chief Strategy Officer from April 2008 through May 2009. In May 2009, Defendant Lin was appointed as the Company's Chief Operating Officer whereupon he resigned from his position as Chief Strategy Officer and CFO, until his death on January 7, 2011.

19. Defendant Edward Meng ("Meng") was the Company's Chief Financial Officer from January 2008 through October 2008.

20.    Defendant Michael Zhang ("Zhang") has been the Company's Vice President for Strategic Planning, Internal Audit, and Internal Control since January 2010 and has been a member of the Board since June 8, 2011.  On July 15, 2011, Defendant Zhang will become the Company's interim CFO.

21.    The defendants referenced above in ¶¶ 16-20 are collectively referred to herein as the "Individual Defendants."

## **SUBSTANTIVE ALLEGATIONS**

### **Background**

22.    A-Power is a renewable energy company in China engaged in providing onsite distributed power generation systems and micro power grids for industrial companies.  It is engaged in designing, constructing, installing and testing distributed power generation and micro power grids as stand-alone facilities and for various customers in the steel, chemical, ethanol, cement, and food industries. The Company designs projects, subcontracts its construction and installation to approved third-party subcontractors under its project oversight, and conducest testing on completed projects prior to turning them over to our customers. In addition to distributed power generation systems, the Company also designs, installs and constructs related facilities for industrial companies.

//

//

### Defendants' False and Misleading Statements

23.    On March 31, 2008, the Company issued a press release announcing its financial results for the fiscal year ended December 31, 2007.  The Company reported revenue of $152.5 million and net income of $15.6 million, or $1.78 diluted earnings per share ("EPS"), as compared to a revenue of $98.7 million and net income of $7.51 million, or $37.55 diluted EPS for the same period a year ago.

24.    On June 6, 2008, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2008.  The Company reported revenue of $32.3 million and net income of $2.9 million, as compared to revenue of $17.5 million and net income of $1.6 million, for the same period a year ago.

25.    On July 11, 2008, the Company filed its annual report on Form 20-F for the year ended December 31, 2007 with the SEC, which was signed by, among others, Defendant Lu, and reiterated the Company's previously reported financial results for the period.  In addition, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the Form 20-F contained signed certifications by Defendants Lu and Meng, stating that the financial information contained in the 20-F was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

26.    On August 25, 2008, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2008.  The Company reported revenue of $65.7 million and net income of $6.23 million, compared to revenue of $54.1 million and net income of $6 million for the same period a year ago.

27.    On November 20, 2008, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2008. The Company reported revenue of $85.4 million and net income of $9.4 million, compared to revenue of $38.9 million and net income of $4.2 million for the same period a year ago.

28.    On April 9, 2009, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2008.  For the fourth quarter, the Company reported revenue of $81.4 million and net income of $10 million or $0.30 diluted EPS, compared to revenue of $42 million and net income of $3.4 million, or $0.26 diluted EPS for the same period a year ago.  For the year, the Company reported revenue of $264.9 million and net income of $28.5 million, or $1.01 diluted EPS, compared to revenue of $152.5 million and net income of $15.2 million, or $2.33 for the same period a year ago.

29.    On June 16, 2009, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2009.  The Company

reported revenue of $31.2 million and net income of $1.5 million or $0.04 diluted EPS, compared to revenue of $32.3 million and net income of $2.9 million, or $0.14 diluted EPS for the same period a year ago.

30.    On June 30, 2009, the Company filed its annual report on Form 20-F for the year ended December 31, 2008 with the SEC, which was signed by, among others, Defendant Lu, and reiterated the Company's previously reported financial results for the period.  In addition, pursuant to the SOX, the Form 20-F contained signed certifications by Defendants Lu and Lin, stating that the financial information contained in the 20-F was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

31.    On August 27, 2009, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2009.  The Company reported revenue of $57.5 million and net income of $6.3 million, or $0.14 diluted EPS, compared to revenue of $65.7 million and net income of $6.2 million, or $0.18 diluted EPS for same period a year ago.

32.    On December 3, 2009, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2009. The Company reported revenue of $96.7 million and net income of $9.9 million, or $0.28 diluted EPS, compared to revenue of $85.4 million and net income of $9.6 million, or $0.28 diluted EPS for same period a year ago.

33.    In connection with a private placement with certain institutional investors, the Company filed a Form 6-K with the SEC disclosing several adverse developments, including:

On July 10, 2009 Shenyang Power Group Company Limited ("SPG"), a 60%-owned subsidiary of the Company, signed a Memorandum of Understanding ("MOU") with Macau Natural Gas Co., Ltd. ("MNG") to construct an offshore liquefied natural gas ("LNG") complex to import, store and re-gasify LNG and to distribute natural gas to Macau and elsewhere. The MOU contemplates establishment of a project company to undertake the construction of the LNG terminals. Although the parties anticipated signing definitive agreements prior to December 31, 2009, certain licenses and approvals from the China National Development and Reform Commission ("NDRC") and the local Macau government required for the project have yet to be obtained, and the parties have postponed completion of definitive agreements. Unless such licenses and approvals are obtained, the Company does not expect that the parties will complete definitive agreements to proceed with this project.

\*\*\*

The Company is in the process of developing and implementing remediation plans to improve its internal control over financial reporting. Management of the Company expects to complete its remediation activities with respect to additional inadequacies in its internal control by the fourth quarter of 2010. Notwithstanding management's remediation activities, the Company expects to receive a qualified report related to its internal controls from its independent auditors in connection with the Company's upcoming annual report filing on Form 20-F for fiscal year ended December 31, 2009.

34.    On March 31, 2010, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2009. For

the fourth quarter, the Company reported revenue of $125.9 million and net income of $20.6 million or $0.61 diluted EPS, compared to revenue of $81.4 million and net income of $10 million, or $0.30 diluted EPS for the same period a year ago.  For the year, the Company reported revenue of $311.3 million and net income of $36 million, or $1.05 diluted EPS, compared to revenue of $264.9 million and net income of $28.5 million, or $0.94 diluted EPS for the same period a year ago.  Additionally, the Company provided its guidance for 2010, projecting net sales of approximately $380 million and net income of approximately $45 million.

36.    On March 31, 2010, the Company filed its annual report on Form 20-F for the year ended December 31, 2009 with the SEC, which was signed by, among others, Defendant Lu, and reiterated the the Company's reported financial results for the period.  In addition, pursuant to the SOX, the Form 20-F contained signed certifications by Defendants Lu and Mak, stating that the financial information contained in the 20-F was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

36.    On June 10, 2010, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2010.   The Company reported revenue of $67.3 million and net income of $29.3 million or $0.64 diluted

EPS, compared to revenue of $31.2 million and net income of $1.5 million, or $0.04 diluted EPS for the same period a year ago.

37.    On August 26, 2010, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2010.  The Company reported revenue of $74.8 million and net income of $11.6 million, or $0.25 diluted EPS, compared to revenue of $57.5 million and net income of $6.3 million, or $0.14 diluted EPS for same period a year ago.

38.    On December 1, 2010, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2010. The Company reported revenue of $57.3 million and net loss of ($1) million, or ($0.02) diluted EPS, compared to revenue of $96.7 million and net income of $9.9 million, or $0.28 diluted EPS for same period a year ago.  As a result, the Company lowered its forecast for 2010 sales to $310 million versus its original forecast of $500 million.  The Company attributed this to lower-than-expected wind turbine sales. Defendant Lu commented the following, in part:

> A-Power's results in the third quarter were less than we hoped we would achieve. The shortfall was due mainly to lower revenues in our Distributed power generation segment because of the timing of work under contracts, and to less-than-planned sales in our Wind power segment. Although Wind power achieved revenues of $15.5 million in the third quarter, we had assumed we would be able to book revenues from a major customer, Spinning Star LLC. However to date, Spinning Star has been unable to secure the expected construction financing for its wind farm project in Texas.

CLASS ACTION COMPLAINT
12

We believe our strategy to benefit from alternative power generation, in the forms of distributed power, wind power, and photovoltaic solar power, continues to be valid for the Company's long-term success and is in the best interests of our shareholders. Our design, engineering, suppliers, and operations are all in very good shape and remain competitive in the marketplace.

39.    The statements referenced above in ¶¶ 23- 38 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them including that: (1) the Company improperly accounted for its related-party transactions such that its financial statements were presented in violation of GAAP; (2) the Company's revenues and income were misstated in violation of GAAP; (3) the Company's revenue and income reported in its filings with the SEC were overstated as the Company reported materially lower revenue and net income in its filings with the SAIC; (4) the Company lacked adequate internal and financial controls; and (5) as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

40.    On April 7, 2011, the Company issued a press release announcing a delay in the reporting of its 2010 financial results.  The Company stated, in relevant part:

The scope of the audit field work that is necessary to bring the audit of our 2010 financial statements to a conclusion was not immediately recognized when the conference call was initially scheduled to discuss our results. After learning from both our internal team and from our outside professional advisers that the work on the financial statements and conclusion of the audit could not be completed prior to the date we had previously scheduled for release, we, of necessity, postponed the conference call and the release of the financial results for 2010.

While we very much regret the delay and confusion caused by our premature announcement of the conference call, it is most important that our financial statements for the year ended December 31, 2010 are completed with all due care and that these financial statements are accurate and reliable when they are released.

I again confirm that the delay was not the result of any accounting irregularities or investigation of accounting errors, nor do we expect any restatement of A-Power's previously audited financial statements as a result of the ongoing audit processes for 2010.

41.     On June 17, 2011, the Company disclosed that an independent director, Robert G. Leckie had resigned from the Company's Board due to his "concerns that his views on process and best practices were not necessarily shared throughout the Company."

42.     Also on June 17, 2011, *Seeking Alpha* published an article, entitled *Evaluating the Clouds Overshadowing A-Power Energy Generation Systems*.  In short, the article believes "that the company's revenue and profit may be overstated in its SEC filings.  Furthermore, a large number of related parties that have not

been properly disclosed have been identified throughout our research process."

The article revealed the following, in relevant part, about A-Power:

· APWR has a history of internal weaknesses over financial controls, which has resulted in an adverse opinion from A-Power's independent auditor. A-Power's auditor issued an adverse opinion in the 2009 audit and APWR has yet to publish its 2010 audited financial statements.

· Management's compensation structure is egregious, offering enormous bonuses on an all-or-none basis for achieving lofty performance goals.

· SAIC filings show that APWR is reporting significantly lower revenue and profit to the authorities in China. For 2009, SAIC filings showed approximately $25 million of revenue, compared to $311 million in SEC filings.

· APWR discloses a number of "Related Party Balances" in which APWR is both lending money to and borrowing money from related individuals and businesses. However, management makes no mention of the actual transactions occurring between APWR and these related businesses. Our investigators in China have uncovered numerous additional undisclosed companies owned and/or operated by A-Power's CEO.

***

Businesses that operate in China file their financial statements with the State Administration for Industry and Commerce. These statements are an excellent place to start piecing together the truth. Reputable Chinese companies submit financial statements to the SAIC that resemble those published in the US. APWR's filings in China indicate that APWR is earning a tiny fraction of the revenue reported to the SEC and is potentially generating millions of dollars of losses rather than profits.

43.     On this news, A-Power stock fell $0.51 per share or more than 22% in two consecutive trading sessions, to close at $1.74 per share on June 20, 2011.

44.     On June 27, 2011, A-Power disclosed the resignation of the Company's auditor, MSCM because "the Company had not retained a qualified independent forensic accounting firm to evaluate certain business transactions that MSCM stated was necessary for MSCM to complete its audit of the Company's financial statements for the year ended December 31, 2010 on a timely basis." As a result, the Company's annual report on Form 20-F for 2010 would be delayed.

45.     After this news, on June 27, 2011, after the market closed, NASDAQ halted trading of A-Power stock at $1.67 per share.

46.     On June 28, 2011, the Company disclosed in a press release the resignation of two independent directors from the Company's Board. The release stated in relevant part:

> Mr. Remo Richli has resigned as a director of A-Power and as chair of the board's audit committee. Mr. Richli stated that his resignation was based on his understanding of events that occurred over the past few weeks, including the resignation of the Company's independent auditor. He also stated that he did not agree with the course of action that the Company has proposed to take in response to recent events.

> Mr. Dilip R. Limaye has regretfully resigned as a director of A-Power and as chair of the board's compensation committee. He stated that his decision to resign was prompted by the events of the last several weeks about which he communicated his concerns and views on actions that should be taken.

47.    On July 1, 2011, the Company disclosed in a press release the resignation of yet another independent director from the Company's Board.  The release stated in relevant part:

> Mr. Jianmin Wu has regretfully resigned as a director of A-Power and as a member of the board's audit committee. Mr. Wu stated that, considering the recent changes occurring at the Company, he believed he would not be able to continue to work effectively as an independent director and contribute as a member of the board of directors.

48.    On July 5, 2011, the Company announced in a press release that Defendant Mak's extended service contract as the Company's Chief Financial Officer will come to an end on July 15, 2011.  Defendant Mak's two year contract had been extended 1.5 months to July 15, 2011.  As a result, Defendant Zhang, the Company's Vice President for Strategic Planning, Internal Audit, and Internal Control, and recently elected to the Company's Board will also serve as its interim Chief Financial Officer.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf a Class of all persons who purchased or acquired A-Power securities during the Class Period (the "Class").  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives,

heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

42.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, A-Power securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by A- Power or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

44.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of

the Class.  Among the questions of law and fact common to the Class are:

• whether the federal securities laws were violated by defendants' acts as alleged herein;

• whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of A-POWER;

• whether the Individual Defendants caused A- Power to issue false and misleading financial statements during the Class Period;

• whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

• whether the prices of A- Power securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

• whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to

them.  There will be no difficulty in the management of this action as a class action.

47.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

• defendants made public misrepresentations or failed to disclose material facts during the Class Period;

• the omissions and misrepresentations were material;

• A- Power securities are traded in efficient markets;

• the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

• the Company traded on the Nasdaq, and was covered by multiple analysts;

• the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

• Plaintiff and members of the Class purchased and/or sold A- Power securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

# CLAIMS FOR RELIEF

## COUNT I
(Against All Defendants For Violations of Section 10(b)
And Rule 10b-5 Promulgated Thereunder)

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of A- Power securities; and (iii) cause Plaintiff and other members of the Class to purchase A- Power securities at

artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

52.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for A-Power securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about A- Power's finances and business prospects.

53.    By virtue of their positions at A- Power, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of A- Power securities from their personal portfolios.

55.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of A-POWER, the Individual Defendants had knowledge of the details of A- Power internal affairs.

56.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of A- Power. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to A- Power's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of A- Power securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning A- Power's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased A- Power securities at

artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by defendants and were damaged thereby.

57.    During the Class Period, A- Power securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of A- Power securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of A- Power securities were substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of A- Power securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with

their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II
(Violations of Section 20(a) of the Exchange Act Against
The Individual Defendants)

60.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

(a)    During the Class Period, the Individual Defendants participated in the operation and management of A- Power, and conducted and participated, directly and indirectly, in the conduct of A- Power's business affairs.  Because of their senior positions, they knew the adverse non-public information about A- Power's misstatement of income and expenses and false financial statements.

(b)    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to A- Power's financial condition and results of operations, and to promptly correct any public statements issued by A- Power which had become materially false or misleading.

(c)    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which A- Power disseminated in the marketplace during the Class Period concerning A- Power's results of

operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause A- Power to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of A- Power within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of A- Power securities.

62.    Each of the Individual Defendants, therefore, acted as a controlling person of A- Power.  By reason of their senior management positions and/or being directors of A- Power, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause A- Power to engage in the unlawful acts and conduct complained of herein.    Each of the Individual Defendants exercised control over the general operations of A- Power and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by A- Power.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Awarding compensatory damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs;

D.    Awarding rescissory damages; and

E.    Awarding such equitable, injunctive or other relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues that may be so tried.

//

//

//

CLASS ACTION COMPLAINT
27

Dated:  July 8, 2011

Respectfully Submitted,

**GLANCY BINKOW & GOLDBERG LLP**

By: _____
Michael Goldberg (#188669)
Lionel Z. Glancy (#134180)
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:    (310) 201-9160
E-mail:        info@glancylaw.com

**POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP**
Marc I. Gross
Jeremy A. Lieberman
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: 212-661-1100
Facsimile:  212-661-8665

**POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184

*Counsel for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, Ali Arar, make this declaration pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against A-Power Energy Generation Systems, Ltd. ("APWR"), and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase APWR securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased APWR securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my transactions in APWR securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

*Arar v. Gerova Financial Group, Ltd.*, 11-cv-3081 (S.D.N.Y. 2011)

*Arar v. NIVS Intellimedia Technology Group, Inc.*, CV-11-03857 (C.D. Cal. 2011)

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.


Executed _____Friday, July 08, 2011___,  at  _____Wilmington, DE_____
                        **(Date)**                                                          **(City, State)**


_____Ali H. Arar_____
                    **(Type or Print Name)**


_____
                    **(Signature)**

Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|------|-----------------------------------|--------------------------|-------------------|
| 4/7/11 | Purchase | 100 Call options | $1.57 |
| 3/10/11 | Purchase | 500 | $4.79 |
| 4/4/11 | Sell | 500 | $4.19 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Valerie Baker Fairbank and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV11- 5649 VBF (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** | [_] **Southern Division** | [_] **Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Michael Goldberg (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone:  (310) 201-9150

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ali Arar, Individually and On Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>A-POWER ENERGY GENERATION SYSTEMS, LTD., JINXIANG LU, KIN KWONG MAK, JOHN S. LIN, EDWARD MENG, and MICHAEL ZHANG.<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11-05649** VBF (FX)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): <u>THE ABOVE-NAMED DEFENDANTS</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Michael Goldberg</u>, whose address is <u>1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067</u>.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

JUL - 8 2011

Dated: _____

Clerk, U.S. District Court

**JULIE PRADO**    SEAL

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Michael Goldberg (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone:  (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ali Arar, Individually and On Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>A-POWER ENERGY GENERATION SYSTEMS, LTD., JINXIANG LU, KIN KWONG MAK, JOHN S. LIN, EDWARD MENG, and MICHAEL ZHANG.<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11-05649**VBF(Ex)<br><br>**SUMMONS** |

TO:    DEFENDANT(S): THE ABOVE-NAMED DEFENDANTS

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Michael Goldberg_____, whose address is _1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    JUL - 8 2011

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) <br> Ali Arar, Individually and On Behalf of All Others Similarly Situated, | DEFENDANTS <br> A-POWER ENERGY GENERATION SYSTEMS, LTD., JINXIANG LU, KIN KWONG MAK, JOHN S. LIN, EDWARD MENG, and MICHAEL ZHANG. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> Michael Goldberg (#188669) <br> Glancy Binkow & Goldberg LLP <br> 1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, T. (310) 201-9150 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No       ☐ MONEY DEMANDED IN COMPLAINT: $ to be proved

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Section 10(b) and 20(a) of the Securities Exchange Act and Violation of SEC Rule 10b-5

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

## CV11- 05649

FOR OFFICE USE ONLY:   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New Castle County, DE |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | People's Republic of China |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, CA |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Uri Geng_    Date July 8, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |